IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-02213-CNS-TPO

THE ESTATE OF VICTOR ESQUIVEL, by and through personal representative
MARISOL MONTALVAN, and D.E. and V.E., minor children, by and through next friend
MARISOL MONTALVAN,

       Plaintiffs,

v.

DEAN WILLIAMS,
ED CALEY,
DAVID LICANO,
VIRGIL FONTENOT,
APRIL ORTIZ,
MARY ANN GARCIA,
NATHAN BENNION,
CHRISTOPHER BUCHANAN,
AMOY HINES,
ANDREW VRELL,
BRADY ROBINSON,
JANE GILDEN, and
AMERGIS HEALTHCARE STAFFING INC.,
d/b/a Maxim Healthcare Staffing Services, INC,

       Defendants.

---

## ORDER

---

Perusal of this case's docket—still at the dismissal stage—confirms its scope. *See*

ECF Nos. 1–139. Reading the Second Amended Complaint's allegations, which the Court

accepts as true, *see*, *e.g.*, *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th

Cir. 2023), confirms its seriousness: Plaintiffs allege that Defendants denied Mr. Esquivel medical treatment, resulting in his avoidable death, *see* ECF No. 72 ¶ 1.

Before the Court are Defendants' four dismissal motions, each, for various reasons, arguing Plaintiffs' claims must be dismissed. *See* ECF Nos. 84, 86, 91, 127. The Court DENIES Defendants' motions. In doing so, the Court presumes familiarity with this case's factual and procedural background, the allegations and claims in Plaintiffs' Second Amended Complaint (the operative complaint), as well as the governing legal standards. *See, e.g.,* Fed. R. Civ. P. 12(b)(6); *Clinton*, 63 F.4th at 1275.

## I.    ANALYSIS

The Court considers Defendants' motions in turn, explaining why their denial is proper.

### A.  Defendant Robinson

Defendant Robinson moves to dismiss on four primary bases. *See generally* ECF No. 84. None persuade.

*First*, Defendant Robinson argues that Plaintiffs' Eighth Amendment claim "based on exposure to lidocaine fails as a matter of law." ECF No. 84 at 5 (citation modified); *id.* (arguing Plaintiffs allege Defendant Robinson "should have prevented [Mr. Esquivel] from consuming lidocaine"); *cf.* ECF No. 97 at 7 (describing Plaintiffs' claim as a "failure to protect claim"). The Court disagrees. In advancing this argument, Defendant Robinson articulates the proper legal standard governing Plaintiffs' claim. *See*, *e.g.,* ECF No. 84 at 6; *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019) ("The deliberate indifference standard has objective and subjective components." (citation modified)). But Defendant

Robinson is wrong to argue that, under it, Plaintiffs fail to adequately plead a "failure to protect" deliberate indifference claim. *Compare* ECF No. 84 at 7, *with* ECF No. 97 at 7.

Decisional law supports the Court's conclusion, not only because Plaintiffs allege that Mr. Esquivel died as a result of lidocaine overdose while incarcerated at the facility, but also because the operative complaint's well-pleaded allegations sufficiently allege that Defendants, including Defendant Robinson, knew lidocaine was widely available throughout the facility, yet did not discharge their duties in ensuring Mr. Esquivel's safety. *See, e.g.,* ECF No. 72 at ¶ 7 ("Defendants also failed to protect Mr. Esquivel from the unprescribed lidocaine they knew was *widespread* and available to him *in the facility*." (emphasis added)); *id.* at ¶ 40 ("It was common knowledge in this prison, known to *all* Defendants, that *some people in the facility*, including Mr. Esquivel, ingested lidocaine[.]" (emphasis added)); *id.* at ¶ 45; *id.* at ¶ 148 ("[Defendant Robinson] failed to hew to the Post Orders requiring careful safety checks, rules [he] knew exist[ed] to ensure the safety of people in [ ] custody like Mr. Esquivel. [B]y Defendant Robinson's own admission, he had heard rumors that Mr. Esquivel was abusing lidocaine, and other incarcerated people were doing the same."); *id.* at ¶ 140; *Burke*, 935 F.3d at 992 ("[D]eath is, without doubt, sufficiently serious to meet the objective component." (citation modified)).[1] *Cf.* ECF No. 113 at 7.

---

[1] Some words about *Burke*, and the line of Sixth Circuit authority to which the parties direct the Court. *See, e.g.,* ECF No. 84 at 8 (citing *Zakora v. Chrisman*, 44 F.4th 452, 468 (6th Cir. 2022)). Addressing similar allegations to those here, the Sixth Circuit, discussing yet distinguishing *Zakora*, concluded that an estate failed to meet its deliberate indifference *objective component* burden where it failed to sufficiently allege, at bottom, a decedent "faced an excessive risk of harm from unfettered access to drugs." *Caraway v. CoreCivic of Tennessee, LLC*, 98 F.4th 679, 685 (6th Cir. 2024). But central to *Caraway's* conclusion was the Sixth Circuit's limitation that "the objective prong of a failure-to-protect claim requires an analysis of the risk to the injured party before the alleged injury occurred." *Id.* (citation modified). This reasoning—and the

Accordingly, Plaintiffs have alleged facts supporting the *objective component*—

death—and facts supporting the *subjective component*—that Defendant Robinson knew

of the significant risk of potentially life-threatening lidocaine abuse and seizure activity

that Mr. Esquivel faced yet disregarded it—and have therefore met their *failure to protect*

deliberate indifference burdens. *See, e.g., Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033,

1045 (10th Cir. 2022); *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th

Cir. 2023); ECF No. 72 at ¶ 148 ("[Defendants'] failure to ensure [Mr. Esquivel's] safety

during this time period was in deliberate indifference to the known and obvious risks of

---

conclusion it compelled—is contrary to binding Tenth Circuit law and so the Court does—and must—disregard it. *See, e.g., Burke*, 935 F.3d at 992; *Palmer v. Kaiser Found. Hosps. Tech. Risk Off.*, No. 16–cv–2376–WJM–KMT, 2017 WL 4564251, at *2 (D. Colo. Oct. 13, 2017), *aff'd*, 753 F. App'x 590 (10th Cir. 2018) ("[T]his Court is bound by Tenth Circuit precedent, not law from other circuits."). Here, the Court's *objective component* focus turns precisely to Mr. Esquivel's death, and—*Caraway* aside—his death satisfies it. *See, e.g., Martinez v. Beggs*, 563 F.3d 1082, 1088–89 (10th Cir. 2009) ("[T]he *ultimate harm* to Mr. Ginn, that is, his heart attack and *death*, was, without doubt, sufficiently serious to meet the objective component" necessary to implicate the Fourteenth Amendment." (citation modified)); *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) ("For example, when delay by prison employees results in damage to a prisoner's heart, the question raised by the objective prong of the deliberate indifference test is whether *the alleged harm* (such as heart damage) is sufficiently serious (which it undoubtedly is), rather than whether the *symptoms* displayed to the prison employee are sufficiently serious . . . ." (emphasis added)). Indeed, *Burke* appeared assured of this proposition without need to further comment. *See* 935 F.3d at 992 ("We have held that death, is, without doubt, sufficiently serious to meet the objective component." (citation modified)); *see also Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1155 (10th Cir. 2022) ("And we've consistently held that death qualifies as a 'substantial harm' that satisfies the objective component." (citation modified)). Finally, to the extent Defendant Robinson argues that cases such as *Zakora* demand that Plaintiff allege Mr. Esquivel died from "illicit" drug use, ECF No. 84 at 8, the Court declines to indulge such an argument premised on an immaterial factual distinction. *Cf. Zakora*, 44 F.4th at 461 (observing complaint alleged decedent died of fentanyl overdose). And on the topic of out-of-circuit authority that does not bind the Court, Defendant Robinson directs the Court to Fifth Circuit cases that would appear to preclude any deliberate indifference claim involving "injur[ies] caused by an inmate's voluntary acts," *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). The Tenth Circuit, however, has certainly permitted deliberate indifference claims premised on drug overdoses or consumption, *see, e.g., Est. of Duke by & through Duke v. Gunnison Cnty. Sheriff's Off.*, 752 F. App'x 669, 673–74 (10th Cir. 2018). Therefore, to the extent Defendant Robinson argues cases such as *Legate* bar Plaintiffs' "failure to protect" claim, he does so unpersuasively. Plaintiffs cite ample cases that reinforce the Court's conclusion and this basic principle. *See* ECF No. 97 at 11; *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 308 (10th Cir. 1985). Defendant Vrell makes a virtually identical argument, discussed further below, which the Court rejects for the same reason. *See* ECF No. 91 at 13. So too do Defendants Williams, Caley, Licano, Fontenot, Ortiz, Garcia, Bennion, Buchanan, and Ellis. *See* ECF No. 86 at 10. At bottom, cases such as *Caraway* and *Legate* do not bar Plaintiffs from asserting Eighth Amendment claims against Defendants.

harm, particularly given his *well-known recent history* of life-threatening seizures and *lidocaine toxicity events*, and his *well-known use of lidocaine* and other dangerous substances." (emphasis added)); ECF No. 97 at 8. The Court agrees with Plaintiff that this conclusion is bolstered by allegations that Defendant Robinson acted in contravention of "Post Orders." ECF No. 72 at ¶ 138; *Burwell v. City of Lansing, Michigan*, 7 F.4th 456, 476 (6th Cir. 2021) ("[The officer] also allegedly violated the jail's cell check policy by failing to account for [the individual's] welfare after seeing him lying in vomit . . . . Although unnecessary, these additional facts provide ample circumstantial evidence for a jury to conclude that [the officer] was deliberately indifferent to [the individual's] serious medical needs." (citation modified)).

Resisting this conclusion, Defendant Robinson advances broader arguments that reach beyond the operative complaint—for example, that determining Plaintiffs' claim is plausible is tantamount to extending "greater protection from the effects of the ingestion of drugs [to incarcerated] than non-incarcerated people." ECF No. 84 at 7. But these arguments distract from the narrow task at hand: Determining whether Plaintiffs have, after considering the operative complaint's allegations in their entirety, and drawing all inferences from them in Plaintiffs' favor, pleaded a plausible *failure to protect* claim against Defendant Robinson. And explained above, Plaintiffs have. *See, e.g., Burke*, 935 F.3d at 992; *Prince*, 28 F.4th at 1045.[2]

---

[2] Defendants Williams, Caley, Licano, Fontenot, Ortiz, Garcia, Bennion, Buchanan, and Ellis advance a virtually identical argument in their dismissal motion, which the Court rejects for the same reason. *See* ECF No. 86 at 9 ("[E]ven if this Court were to assume that inmates are entitled to greater protections than non-incarcerated people . . . .").

*Second*, Defendant Robinson argues that Plaintiffs' "failure to provide adequate medical care" theory of deliberate indifference is "not cognizable" under the Eighth Amendment against him. ECF No. 84 at 9. Plaintiffs represent it "does not assert such a theory against Defendant Robinson," and instructs the Court to "disregard" the "portions of [Defendant Robinson's] motion" attendant to this argument. ECF No. 97 at 3.

*Third*, Defendant Robinson argues that Plaintiffs fail to allege any "personal participation" on his behalf. ECF No. 84 at 10; *see also* ECF No. 113 at 2. In doing so, Defendant Robinson urges application of the *supervisory liability* doctrinal framework, *see* ECF No. 84 at 10, but there is nothing in the operative complaint indicating that Plaintiffs sue Defendant Robinson in his capacity as a supervisor. *Compare* ECF No. 72 at ¶ 21 ("Defendant Brady Robinson was at all times relevant an employee of CDOC . . . ."), *with id.* at ¶ 8. So Defendant Robinson stumbles out of the doctrinal gate, and the caselaw he cites has no application in the Court's analysis of whether Plaintiffs have plausibly alleged Defendant Robinson's "personal participation." ECF No. 84 at 10. Indeed, the Court agrees with Plaintiffs that the fundamental inquiry is instead whether Plaintiffs have plausibly alleged elements of a deliberate indifference claim against Defendant Robinson. *See* ECF No. 97 at 13. And explained above in the Court's analysis of Defendant Robinson's arguments attendant to Plaintiffs' *failure to protect* theory, Plaintiffs have certainly alleged sufficient factual content to demonstrate that Defendant Robinson participated himself in the underlying conduct giving rise to Plaintiffs' deliberate indifference claim. *See, e.g., Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018) ("[Plaintiffs] must have alleged facts showing that the [defendants] had been personally

involved in the underlying violations through their *own participation* or supervisory control." (citation modified)).[3] That some well-pleaded allegations about Defendant Robinson's own, specific conduct also mention the conduct of other defendants does render them implausible. *Cf.* ECF No. 113 at 3.

**Fourth**, Defendant Robinson argues he is entitled to qualified immunity. ECF No. 84 at 11. The quality of Defendant Robinson's briefing does not establish this entitlement. For approximately one page, Defendant Robinson recites descriptive legal principles. *See id.* at 11–12. Then, Defendant Robinson offers the following sentence before reciting the *clearly established law* standard over another page: "Even if Plaintiff stated a Constitutional violation—which she has not—the law was not clearly established that any of Robinson's alleged conduct rose to the level of an Eighth Amendment violation." *Id.* at 12. Finally, Defendant Robinson states "research has not revealed any factually similar case decided by the Tenth Circuit or the Supreme Court"—without offering *any* legal citations himself in support of the argument that Plaintiffs cannot meet qualified immunity's *clearly established* burden. *See id.* at 13.

"[T]o trigger the plaintiff's two-part [qualified immunity] burden, a defendant must first *adequately present* the qualified-immunity defense." *Berryman v. Niceta*, 143 F.4th

---

[3] Interestingly, in their own dismissal motion, Defendants Williams, Caley, Licano, Fontenot, Ortiz, Garcia, Bennion, Buchanan, and Ellis (the Department Defendants) discuss what is required to establish "individual liability" under § 1983, ECF No. 86 at 11, and direct the Court to a case that recites what is essentially the basic Rule 8 pleading standard. *See Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1160 (10th Cir. 2007) ("[A] district court might helpfully advise a *pro se* litigant that, to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated. After all, these are, very basically put, the elements that enable the legal system to get weaving."). Thus, the Department Defendants urge application of an individual "personal involvement" standard directly at odds with a standard urged by Defendant Robinson in his separate motion.

1134, 1140 (10th Cir. 2025) (citation modified). And "to adequately present the defense, the defendant must not only explicitly raise it . . . but must also plead the defense beyond a perfunctory assertion." *Id.* (citation modified); *cf. Takwi v. Garland*, 22 F.4th 1180, 1187 (10th Cir. 2022) ("Language provides many avenues to *fully and clearly* express an idea." (emphasis added)). As Plaintiffs correctly observe, *see* ECF No. 97 at 16, the Court has previously—like the Tenth Circuit in *Berryman*—rejected precisely the bare assertion of qualified immunity that Defendant Robinson offers here, and for substantially the same reason it does so again. *See Est. of Ward by & through Stamp v. Pueblo Cnty., Colorado*, No. 1:23–cv–00473–CNS–MDB, 2023 WL 4744928, at *9 (D. Colo. July 25, 2023) ("Defendants' brief, incantatory remarks do not lend themselves to meaningful analysis, and for this reason the Court's analysis is equally brief: Defendants' mention of qualified immunity, without more, does not demonstrate their entitlement to it."). Defendant Robinson's contentions *in reply* fail to salvage his bare argument or warrant the Court's engagement with it. *See* ECF No. 113 at 8.

Accordingly, and for the reasons set forth above, the Court denies Defendant Robinson's dismissal motion.

### B. The Department Defendants

As a preliminary matter, the Court agrees with Plaintiffs that arguments advanced by Defendants Williams, Caley, Licano, Fontenot, Ortiz, Garcia, Bennion, Buchanan, and Hines/Ellis (collectively, the Department Defendants) are best analyzed under the fundamental deliberate indifference doctrinal framework that governs the Court's analysis

of Plaintiffs' claims.[4] *See* ECF No. 99 at 2. Accordingly, the Court explains why denial of the Department Defendants' motion is proper by considering the Defendants' arguments through that framework—which Defendants acknowledge applies—focusing on the plausibility of Plaintiff's *failure to treat* and *gatekeeper* theories of deliberate indifference attendant to specific, individual Department Defendants. *See, e.g.,* ECF No. 99 at 11; ECF No. 86 at 5; *Johnson v. Sanders*, 121 F.4th 80, 90 (10th Cir. 2024) ("[T]he deliberate indifference standard . . . demands an individualized assessment."); *Lucas*, 58 F.4th at 1137 ("[T]he subjective component can be satisfied under two theories." (citation modified)).[5]

### 1. Failure to Treat & Gatekeeper Theories

***Defendants Bennion and Buchanan.*** Plaintiffs have stated plausible claims against Defendants Bennion and Buchanan under both *failure to treat* and *gatekeeper* theories of deliberate indifference.

***First***, as to *failure to treat* liability, Plaintiffs have sufficiently pleaded that both defendants failed to properly treat Mr. Esquivel. The operative complaint contains

---

[4] The Department Defendants represent that Defendant Amoy Hines is "correctly known" as "Amoy Ellis." ECF No. 86 at 1. Plaintiffs do not appear to respond to this "correction" in their response brief. *Cf.* ECF No. 99. Based on the Department Defendants' representation, the Court briefly refers here to Defendant Hines also as Defendant Ellis in introducing the Department Defendants' dismissal motion. But, based on the allegations in the operative complaint, which the Court must accept as true, the Court refers to Defendant Hines throughout its analysis of those allegations, given that Plaintiffs allege that it is Amoy *Hines* who engaged in the underlying conduct. Indeed, consistent with the operative complaint's allegations, the Department Defendants refer to Defendant Hines in advancing their own dismissal arguments. *See* ECF No. 86 at 16.

[5] In doing so, the Court agrees with Plaintiffs that the Department Defendants appear to concede that the *objective component* of the deliberative indifference test is met. *See, e.g.,* ECF No. 99 at 11. Regardless, and as discussed above in the Court's analysis of Defendant Robinson's motion, given that the operative complaint alleges that Mr. Esquivel died, Plaintiffs have clearly met the deliberate indifference *objective component*. *See, e.g., Burke*, 935 F.3d at 992.

numerous well-pleaded allegations detailing that Defendant Bennion and Buchanan had personal knowledge of Mr. Esquivel's seizures, *see, e.g.,* ECF No. 72 at ¶ 32–34, including such knowledge through Mr. Esquivel's self-medication, *id.*, as well as that— even more specifically—on June 6, 2022, Mr. Esquivel had not received mental health treatment, was not taking psychiatric medications, *id.* at ¶ 39, and that—despite learning this information—Defendants Bennion and Buchanan neither treated Mr. Esquivel nor referred him for any neurological or seizure evaluation, *id.* Further, although Defendant Bennion later assessed Mr. Esquivel and learned of one of Mr. Esquivel's seizure events and that lidocaine was likely a cause of Mr. Esquivel's seizure events, *see, e.g., id.* at ¶ 42, and ordered "lab tests including to test Mr. Esquivel for lidocaine level[s]," *id.* ¶ 46, the operative complaint crucially alleges that "*despite ordering the test*, Defendants Bennion and Buchanan failed to take action even after *the positive test* for lidocaine in Mr. Esquivel's lab results," *id.* ¶ 47 (emphasis added). Moreover, Plaintiff alleges that "they failed to *even review* the lab results until over a month later." *Id.* (emphasis added). In conjunction with this, Plaintiff alleges that "Defendants Buchanan and Bennion failed to prescribe Mr. Esquivel medication to treat his apparent seizure disorder." *Id.* ¶ 48.

These allegations, coupled with others about Defendants Buchanan and Bennion's conduct, are sufficient to demonstrate that they failed to treat Mr. Esquivel's known medical condition, and therefore that Plaintiff has plausibly pleaded a deliberate indifference claim under a *failure to treat* theory against both. *See, e.g.,* ECF No. 72 at ¶ 48. At a minimum, both defendants knew of a serious and obvious risk that Mr. Esquivel's alleged seizure disorder posed—to say nothing of how his known lidocaine self-

medication compounded and exacerbated this risk—and disregarded it. *See, e.g.,* ECF
No. 72 at ¶ 48 (alleging Defendants Buchanan and Bennion "failed to prescribe Mr.
Esquivel medication to treat his apparent seizure disorder" and that they knew "[his]
seizures were considered 'grand mal' or 'tonic-clonic'"); *Est. of Taylor v. Denver Health &
Hosp. Auth*., No. 1:23–cv–02355–CNS–KAS, 2025 WL 1952102, at *4 (D. Colo. July 16,
2025); *Prince*, 28 F.4th at 1046 ("[V]iewing the evidence in the light most favorable to the
plaintiff . . . the record reflects that [an official] both knew of and *disregarded a serious
risk* to [the inmate's] health.") (emphasis added); *Est. of Jensen by Jensen v. Clyde*, 989
F.3d 848, 859 (10th Cir. 2021). That both defendants provided *some* treatment to Mr.
Esquivel—for instance, ordering labs for him—is insufficient to immunize them from
liability, especially where Mr. Esquivel presented, and self-reported, severe health risks
about which both defendants were aware. *Lucas*, 58 F.4th at 1140 ("[P]roviding some
modicum of treatment does not per se insulate [a defendant.]"); *Jensen*, 989 F.3d at 859
("We believe that these circumstances—particularly [the detainee's] self-report that she
had been vomiting for four days and could not keep down water—present a risk of harm
that would be obvious to a reasonable person.").

    ***Second***, as to *gatekeeper* liability, and as indicated above, Defendants Buchanan
and Bennion, both alleged medical providers, failed to refer Mr. Esquivel to a neurologist
for a neurological or seizure evaluation. *See, e.g.,* ECF No. 72 at ¶¶ 44; 47; 49 ("[I]n
handling Mr. Esquivel's August 9, [2022] seizure event, Defendants Bennion and
Buchanan intentionally did not call for an ambulance or even non-emergently send Mr.
Esquivel for a seizure or neurological evaluation . . ."); 50 ("Defendants Bennion and

Buchanan knew as of May 15 [2022] Mr. Esquivel likely needed a seizure and neurological evaluation from a specialist . . . [r]ather than take action or even hospitalize Mr. Esquivel, they failed to do so . . ."). The Court agrees with Plaintiffs that accepting these well-pleaded allegations as true, as the Court must at the motion to dismiss stage, they are sufficient to plausibly allege Defendants Bennion and Buchanan's deliberate indifference under a *gatekeeper* theory of liability—again, notwithstanding any allegations that the defendants at times provided *some* medical care to Mr. Esquivel. *See* ECF No. 99 at 15; *Johnson*, 121 F.4th at 94–95; *Lucas*, 58 F.4th at 1139 ("[I]t is possible to have *some* medical care and still state a claim under the gatekeeper theory." (emphasis added)); *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1160 (10th Cir. 2022) (determining on summary judgment appeal that "a reasonable jury could find that [an individual defendant] abdicated her gatekeeping duties by failing to obtain *medical assistance* for [the plaintiff]" (emphasis added)). *Cf.* ECF No. 122 at 6.

   ***Defendants Licano, Fontenot, Ortiz, Williams, and Caley.*** Plaintiffs state plausible claims against Defendants Licano, Fontenot, Ortiz, Williams, and Caley—even if the Court considers Plaintiffs' claims against them under a supervisor liability rubric.

   ***First***, Plaintiff asserts a deliberate indifference claim against Defendants Licano, Fontenot, Ortiz, Garcia, Williams, and Caley under a *gatekeeper* theory of liability. *See* ECF No. 99 at 15; *Paugh*, 47 F.4th at 1154. For the reasons set forth below, the Court agrees with Plaintiffs that they have set forth plausible *gatekeeper* deliberate indifference claims against these defendants.

   Throughout the operative complaint, Plaintiffs allege:

- Defendants Licano, Fontenot, and Ortiz learned about Mr. Esquivel's series of medical emergencies and hospitalizations over the course of 2022, including his August 9 seizure. These Defendants also knew about his misuse of lidocaine patches by boiling them and drinking the liquid, and that this was a common, well-known phenomenon occurring in the prison.

- Defendant Licano was shift commander on May 15 at the time of Mr. Esquivel's seizure, and personally interviewed Mr. Esquivel after he returned from the hospital, making him acutely aware of the dangers. Showing he knew substances were involved, Defendant Licano ordered a cell search and urinalysis.

- Defendants Licano, Fontenot, and Ortiz also knew about Mr. Esquivel's June 5 and August seizures. After each of these events, Mr. Esquivel once again was placed in solitary confinement in restricted housing for 15 days as a punitive response, and denied the care he needed. These Defendants also knew that placing Mr. Esquivel in isolation like that, with his obvious mental illness and untreated suffering, would only increase the dangers to him and exacerbate the risk he would continue to self-medicate with lidocaine upon placement back in general population.

- Defendants Licano, Fontenot, and Ortiz knew lidocaine patches were found in Mr. Esquivel's cell, that he tested positive for lidocaine, and that boiling lidocaine patches to consume the liquid was a known behavior by Mr. Esquivel and some others in the facility.

- Defendants Licano, Fontenot, and Ortiz knew that Mr. Esquivel obviously suffered from a seizure disorder related to his multiple life-threatening seizures, and they further knew it appeared his use of lidocaine was triggering the dangerous seizures.

- Despite this, Defendants Licano, Fontenot, and Ortiz failed to fulfill their supervisory duty to ensure Mr. Esquivel was safely housed and treated while in their custody. After the August 9 seizure event related to lidocaine, these Defendants failed to ensure Mr. Esquivel received a seizure or neurological evaluation and failed to take any action to prevent him from accessing lidocaine patches in the future.

- On July 11, 2022, attorneys Helen Oh and Tyrone Glover (Attorneys) wrote a letter to CDOC officials Director Dean Williams and Warden Ed Caley. In the letter, these Attorneys sounded the alarm which was already obvious: Mr. Esquivel was suffering multiple life-threatening

seizures and needed immediate neurological and other treatment. Attorneys notified Defendants Williams and Caley that Mr. Esquivel suffered a seizure on May 15, 2022, while in CTCF, causing him to fall and suffer serious injuries. They notified them that Mr. Esquivel wanted medical treatment for his seizures and was continuing to experience confusion, tremors, intense nausea, drooping facial muscles, and other alarming neurological symptoms.

- Attorneys also informed Defendants Williams and Caley of a seizure-like incident around June 5, 2022, after a visit with his mother at the prison, in which Mr. Esquivel suffered neurological and other symptoms and was taken to the hospital.

- Attorneys then provided caselaw and argument reiterating to Defendants Williams and Caley their duty to ensure Mr. Esquivel received care for these alarming seizures and other neurological symptoms that had hospitalized him on multiple occasions. Attorneys specifically noted Mr. Esquivel needed an evaluation by a neurologist.

- Defendants Williams and Caley received the Attorney letter by email and it was reviewed and preserved. Defendants Williams and Caley failed to take appropriate and necessary action in response to this Attorney letter in the coming weeks, including throughout August and up to and including September 5, in deliberate indifference to Mr. Esquivel's health and life.

- Defendants Williams and Caley further knew that lidocaine abuse was occurring in CTCF, and that people including Mr. Esquivel were trading property or purchasing lidocaine patches, which they would then consume by boiling the patch and drinking the liquid. They knew this use of the substance was dangerous and potentially fatal.

- Defendants' failure to stop this practice is consistent with the deliberate indifference toward Mr. Esquivel's life and health during this time period. Moreover, Defendants knew that Mr. Esquivel's urge to self-medicate through lidocaine, and possibly other substances, was a key cause of this underlying vulnerability to extortion. Rather than act to ensure he received treatment and care and safely house him without access to such dangerous drugs, Defendants failed to act in deliberate indifference to the deadly consequences that would predictably follow.

ECF No. 72 at ¶¶ 95, 97, 99–102, 110–14, 17 (citations modified). These allegations are

sufficient to establish plausible deliberate indifference claims under a *gatekeeper* theory

of liability against these defendants. *See, e.g., Lucas*, 58 F.4th at 1139 ("The inquiry under a gatekeeper theory is not whether the prison official provided some care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises."); *Prince*, 28 F.4th at 1046 (concluding estate administrate met *subjective component* burden where "[d]espite being on notice of the severity of [decedent's] symptoms, [a defendant] made no effort to order that [the decedent] be transported to a hospital"); *Paugh*, 47 F.4th at 1163; *Burke*, 935 F.3d at 994; *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). *Cf.* ECF No. 122 at 8.

**Second**, as to these defendants' *supervisory liability*, Plaintiffs allege that these defendants occupy various supervisory roles. *See, e.g.,* ECF No. 72 at ¶ 93. Thus, the nature of their allegations poses the question of whether Plaintiffs must satisfy elements of supervisory liability against these defendants. *See also id.* at ¶ 12 (alleging Defendant Caley was "at all relevant times the warden of Colorado Territorial Correctional Facility"); ECF No. 86 at 10.[6] Of course, under a typical, individual liability analysis, Plaintiffs have set forth plausible claims against these defendants. But even applying supervisory liability principles to defendants, *see, e.g., Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018), Plaintiffs have plausibly alleged facts satisfying elements of supervisory liability.

As Plaintiffs explain in their brief, *see* ECF No. 99 at 16 n.5, the allegations above show that these defendants directly participated in the underlying conduct giving rise to

---

[6] The Court notes that it appears Plaintiffs' Second Amended Complaint has a typographical error where its paragraphs "reset" from number eighteen to number twelve on page six—essentially at the numbered paragraph concerning Defendant Caley. *See* ECF No. 72 at 6. This apparent error has not affected the Court's citations to various paragraphs in the operative complaint throughout this order.

Plaintiffs' claims, that their participation caused Mr. Esquivel's constitutional violation by "setting in motion" events that Plaintiffs plausibly allege resulted in his death, *see Burke*, 935 F.3d at 997 (citation modified), and that—for all the reasons above—were done with deliberate indifference. *See, e.g., Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) ("[E]ven if 'direct participation' is not 'necessary' to satisfy this [personal involvement] element . . . surely it is sufficient." (citation modified)); *Lovato v. Mahler*, No. 1:21–cv–01986–RMR–MDB, 2023 WL 2613821, at *3 (D. Colo. Mar. 23, 2023) ("The third prong—culpable state of mind—can be established by showing that the official acted with deliberate indifference." (citation modified)). Accordingly, Plaintiffs have pleaded facts establishing all three elements of supervisory liability.[7]

Defendants resist this conclusion on specific bases as to specific defendants. The Court considers and rejects them in turn.

*First*, as to Defendants William and Caley, the Department Defendants argue that they lacked personal participation in the violation of Mr. Esquivel's constitutional rights. *See* ECF No. 86 at 12. But the operative complaint alleges facts showing that Defendants William and Caley were "responsible for but failed to create and enforce policies to protect [Mr. Esquivel] from" the risks his own medical conditions posed as well as lidocaine

---

[7] The Department Defendants attempt to manufacture concerns about whether Plaintiffs have adequately pleaded proximate causation and foreseeability. *See* ECF No. 122 at 5. But these concerns are ill-founded in this doctrinal context, where the Court asks whether Plaintiffs have met their deliberate indifference burdens as to each defendant and, where, if necessary, any burdens required to establish a defendant's supervisory liability, such as causation or personal participation. And as explained throughout the Court's analysis of the Department Defendant's dismissal motion, Plaintiffs have met their burdens under the applicable doctrinal frameworks, notwithstanding the Department Defendants' efforts to recast those burdens in slightly different and unpersuasive terms.

circulating throughout the facility. *Perry*, 892 F.3d at 1122. *See also* ECF No. 72 at ¶¶ 109–14.[8] And to the extent that Defendants Williams and Caley attempt to escape supervisory liability because Defendants Bennion and Buchanan "completed a medical consult," as explained above this is insufficient for any of these four defendants to be absolved of liability under a *gatekeeper* theory of deliberate indifference. ECF No. 86 at 13; *Lucas*, 58 F.4th at 1139. Nor does the argument that reliance on medical opinions immunize them from liability prevail, *see id.* 14, as the case Defendants Williams and Caley offer in support of this proposition contains a material factual distinction to the facts alleged in the operative complaint. *Cf. Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1265 (10th Cir. 2022) ("Mr. Beauford *actually received* medical care during a critical time." (emphasis added)).

**Second**, as to Defendants Licano, Fontenot, and Ortiz, the Department Defendants argue that Plaintiffs fail to allege how they would have known about Mr. Esquivel's seizures or lidocaine use. *See* ECF No. 86 at 14. But as shown above, the operative complaint contains numerous allegations explaining how these defendants possessed such knowledge, including allegations that Defendant Licano personally

---

[8] The Department Defendants attach the July 11, 2022, "attorney letter" in connection with their dismissal motion, contending it does not identify a "full-blown seizure disorder," and thus apparently undermines Plaintiffs' claims against Defendants Williams and Caley. *See* ECF No. 86 at 13; ECF No. 86-1. The Court may consider the letter in its analysis of the Department Defendants' dismissal motion, *see Clinton*, 63 F.4th at 1275, and doing so does not undermine Plaintiffs' claims against Defendants Williams and Caley. For instance, the letter describes at length Mr. Esquivel's health complications that at the time were ongoing. *See* ECF No. 86-1 at 1 ("Mr. Esquivel *continues* to experience confusion, tremors, bouts of intense nausea, loss of appetite, changes in sleep patterns, and drooping of his facial muscles." (emphasis added)). Accordingly, because the statements in this letter do not "utterly discredit" the operative complaint's allegations, *Clinton*, 63 F.4th at 1288 (citation modified), the Court rejects the Department Defendant's argument that the letter somehow undermines the plausible allegations that Defendants Williams and Caley face supervisory liability for Plaintiffs' claims against them. *Cf.* ECF No. 86 at 13.

interviewed Mr. Esquivel, that these defendants specifically knew of Mr. Esquivel's placement in solitary confinement and how that placement would negatively affect his health,  that these defendants knew lidocaine patches were found in Mr. Esquivel's cell, and that Mr. Esquivel tested positive for lidocaine. *See, e.g.,* ECF No. 72 at ¶¶ 95, 97, 99–100. As for the Department Defendants' argument that Plaintiffs do not allege these defendants possessed authority to "refer inmates" for treatment, this is not only immaterial as a doctrinal matter, but is essentially an invitation to draw inferences *away* from Plaintiffs' allegations, which the Court must decline. *See* ECF No. 86 at 15; *Clinton*, 63 F.4th at 1275. And as with Defendants William and Caley, as explained above the argument that reliance on medical opinions immunizes them from liability is unavailing based on the numerous, well-pleaded allegations that, at this stage, the Court is bound to accept as true. *Cf. Beauford*, 35 F.4th at 1265.

*Third*, as to Defendants Hines, Buchanan, and Bennion, the Court disagrees with the Department Defendants that Plaintiffs have failed to allege they "had a culpable mental state." ECF No. 86 at 16. As explained above, and contrary to the Department Defendants' arguments, *see, e.g.,* ECF No. 86 at 18, the operative complaint contains numerous, well-pleaded allegations as to Defendants Buchanan and Bennion's culpable mental state of deliberate indifference. *See, e.g., Lovato*, 2023 WL 2613821, at *3. And as for Defendant Hines, the operative complaint alleges,

- On September 5, 2022, the predictable tragedy happened: Mr. Esquivel died from a seizure related to lidocaine toxicity. This death was not only preventable by the Defendants who failed to act prior to that date, it was preventable had Defendants Hines, Vrell, and Robinson performed their duties to keep Mr. Esquivel safe.

- At approximately 2:14 PM, as part of the next shift, Defendant Hines conducted a safety round but failed to ensure Mr. Esquivel was breathing and safe, and failed to require he stand, in violation of Post Orders.

- At approximately, 3:09 PM, Defendant Hines again conducted an inadequate safety round, failing to ensure Mr. Esquivel was breathing and safe or that he stand, in violation of Post Orders.

- During a round at 4:10 PM, Defendant Hines noticed that both Mr. Esquivel and his cellmate had not responded to Defendant Officer Hines' instruction, as they remained in their bunks.

- Defendant Officer Hines instructed Mr. Esquivel's cellmate, who immediately responded, to pull what seemed to be a rug from Mr. Esquivel's face. Defendant Officer Hines noticed discoloration and that Mr. Esquivel was unresponsive. Mr. Esquivel's appearance was so disturbing that an additional staff member who reported to the scene noted she was seeing his distorted face when she closed her eyes at night.

- Defendant Hines still failed to enter Mr. Esquivel's cell [after seeing him unresponsive] and waited, filming, and taking no action to help save Mr. Esquivel for over four minutes even once she had an additional officer on scene. When two more personnel responded, they approached Mr. Esquivel's cell at what can only be described as an excruciatingly slow pace. Finally, after doing nothing to try and save Mr. Esquivel, Defendant Hines entered the cell and pulled Mr. Esquivel from the top bunk. A medical emergency was declared.

- Defendants Hines, Vrell, and Robinson failed to hew to the Post Orders requiring careful safety checks, rules they knew exist to ensure the safety of people in their custody like Mr. Esquivel. By Defendant Hines's own admission, Defendants knew of Mr. Esquivel's substance use disorder, knew of his seizure events, and knew that he was a particularly vulnerable person in their care.

ECF No. 72 at ¶¶ 133, 141–45, 148.

These allegations are much more than simply "conclusions couched as 'facts'", ECF No. 86 at 17, and accordingly—and for substantially the same reasons the Court concluded that Plaintiffs have plausibly pleaded claims against Defendant Robinson—

Plaintiffs have plausibly pleaded that Defendant Hines possessed the requisite state of mind to satisfy the deliberate indifference *subjective component. Cf. id.* at 16 (arguing that Plaintiffs have not "stated facts to support the second prong of their claims" as to these defendants). And as with their other arguments, where the Department Defendants argue that "there are no allegations to lend plausibility to an argument that standing checks would have led to a different result," *id.* at 86 at 18, this invites a fundamentally obvious and obviously fundamental misapplication of the governing legal standard. The Court—as with the all Department Defendants' prior invitations—declines the invitation.

*Defendant Garcia.* the Department Defendants argue that "the [operative] complaint contains no allegations that [Defendant] Garcia failed to act to protect" Mr. Esquivel. ECF No. 86 at 19. The Court disagrees. The operative complaint alleges,

- As case manager, Defendant Garcia reviewed Mr. Esquivel's prison file and was familiar with his history of seizures, his history of self-medicating with substances including lidocaine, the family tragedy of his sister Luisa's death in late 2021, and the other circumstances of his confinement as alleged herein.

- Defendant Garcia also knew, as did all Defendants, about the use of lidocaine patches in CTCF by incarcerated people by boiling the patches and drinking the liquid, and that such use posed a serious danger to the health and life of people who did it, including Mr. Esquivel.

- Mr. Esquivel repeatedly alerted staff including Defendant Garica that he was struggling to cope with Luisa's death in the months preceding his own tragic death.

- Defendant Garcia witnessed Mr. Esquivel's increase in anxiety, depression, and resultant substance abuse following his sister's death.

- Defendant Garcia learned that on August 13, 2022, Mr. Esquivel reported to staff that he was consuming lidocaine to cope with Luisa's death, or self-medicating to cope with the symptoms of depression or other mental condition impacting him. Despite this explicit cry for help, Defendant took no

action to eliminate or even reduce Mr. Esquivel's access to lidocaine, or to ensure he received treatment for the grief and suffering he was enduring.

• Mr. Esquivel specifically asked Defendant Garcia to be seen by Mental Health on August 23, 2022. Defendant Garcia knew about Mr. Esquivel's August 9 medical emergency and life-threatening seizure, she knew he was using lidocaine to self-medicate, and she knew he needed immediate help. Despite the crisis, Defendant Garcia failed to ensure Mr. Esquivel received a prompt mental health assessment on August 23 or thereafter. He would be dead just a few weeks later on September 5, never having received the help he needed.

• This delay and denial of access to mental health care by Defendant Garcia was in deliberate indifference to the serious and immediate risk Mr. Esquivel faced if his mental illness remain untreated. [This] deliberate indifference was magnified by her knowledge of his use of a dangerous substance—lidocaine—to self-medicate, that the substance had triggered life-threatening seizures, that lidocaine continued to be available to him, and that Mr. Esquivel would inevitably return to self-medicating with lidocaine if no intervention promptly occurred.

• Defendant Garcia also failed to ensure Mr. Esquivel was referred to a neurologist or seizure specialist. Because of Defendant Garcia's deliberate indifference to the risks of another seizure, Mr. Esquivel never received any diagnosis or treatment for his seizures.

• Defendant Garcia further failed to ensure Mr. Esquivel was placed in housing that would provide adequate monitoring, or that would eliminate or even reduce his access to lidocaine. Defendant Garcia knew of the staffing shortages that enabled diversion of lidocaine to high-risk individuals such as Mr. Esquivel.

• Defendant Garcia knew that, in response to Mr. Esquivel's hospitalizations in May, June, and August, CDOC punished him with solitary confinement, which she knew only exacerbated his symptoms and made it more likely he'd continue to self-medicate. Defendant Garcia further knew that whenever Mr. Esquivel was returned to general population, he would resume self-medicating. In reckless disregard to these known risks, Defendant Garcia allowed for Mr. Esquivel to remain housed in an environment that had already been proven life-threatening. Defendant Garcia's failure to ensure prompt mental health and medical care, and a safe housing environment, was a direct cause of his death.

ECF No. 72 at ¶¶ 120–26, 128–30. For substantially the same reasons as those discussed in the Court's analysis of Defendant Robinson's dismissal motion, these allegations are sufficient to plausibly allege Defendant Garcia's liability under a *failure to protect* theory of deliberate indifference. Regardless, the Department Defendants' cursory arguments to the contrary—that Mr. Esquivel received some medical treatment, and that Defendant Garcia was entitled to rely on the medical staff assessments, *see* ECF No. 86 at 20—have been rejected above, and the Court rejects them again here.

### 2. *Qualified Immunity*

The Department Defendants contend they "are entitled to qualified immunity" as a defense to Plaintiffs claims against them. *See* ECF No. 86 at 20. After reciting the general legal standard, the Department Defendants devote only two substantive paragraphs of argument explaining why they contend they enjoy such an entitlement, chiefly that: "As noted above, [Plaintiffs] have failed to allege facts establishing that [the Department] Defendants violated [Mr.] Esquivel's Eighth Amendment rights; it follows that Plaintiffs have not alleged facts sufficient to establish violations of a clearly established right." ECF No. 86 at 21.

Put to the side that the Department Defendants' arguments are so brief as to warrant rejection on that basis alone. *See, e.g., Berryman*, 143 F.4th at 1140; *Ward*, 2023 WL 4744928, at *9.[9] But the essential "incorporation" of the Department Defendants' *dismissal* arguments into their *qualified immunity* arguments is doctrinally improper. *See Berryman*, 143 F.4th at 141 ("[I]n raising a qualified-immunity defense, a defendant may

---

[9] So brief a reader could be forgiven for mistaking the Department Defendants' argument as lazy.

not merely rely on substantive legal arguments based on the Rule 12(b)(6) failure-to-state-a-claim standard." (citation modified)). "This is because a claim of immunity is conceptually distinct from the merits of the plaintiff's claim." *Ellis v. Salt Lake City Corp*., 147 F.4th 1206, 1220 (10th Cir. 2025) (citation modified). Accordingly, even if the Court could read the Department Defendants' substantive argument without half a page to spare, the Department Defendants are wrong to essentially incorporate the entirety of their dismissal briefing— "as noted above"; "it follows"—into one sentence in one paragraph in a section of their brief concerning such an important defense that might otherwise shield them from "liability for civil damages." *See id.* at 1140 (citation modified). And nothing in the Department Defendant's reply brief can salvage their motion's too-short briefing. *Cf.* ECF No. 122 at 12; *Healy-Petrik v. State Farm Fire & Cas. Co*., No. 2:20–cv–00611–TC–JCB, 2022 WL 464220, at *6 n.8 (D. Utah Feb. 15, 2022) ("[T]he court does not consider arguments raised for the first time in reply." (citation modified)).

### 3.  Failure to Protect Theory

Plaintiffs argue that they have plausibly alleged a "failure to protect claim" that "Defendants failed to protect and monitor Mr. Esquivel from known and specific dangers to his health." ECF No. 99 at 18. For all the reasons set forth above, the Court agrees. Fundamentally, Plaintiffs have plausibly alleged that Defendants Fontenot, Licano, Ortiz, Garcia, Williams, Caley, and Hines all knew the dangers that lidocaine posed to Mr. Esquivel but failed to act in the face of those known dangers. *Id.* at 20–21, 23.[10] Even

---

[10] The Court notes that Plaintiffs represent they bring claims Defendants Buchanan and Bennion under "failure to properly treat" and "fail[ure] [to meet] their gatekeeper duty" theories of liability. ECF No. 99 at 12. Thus, even though the Court is here concerned with the plausibility of Plaintiffs' claims against Defendants Fontenot, Licano, Ortiz, Garcia, Williams, Caley, and Hines based on a *failure to protect* theory,

construing the arguments the Department Defendants make throughout their dismissal briefing as attendant to Plaintiffs' *failure to protect* theory of deliberate indifference, the Court has rejected them and does so again.

\* \* \*

Accordingly, and for the reasons set forth above, the Court rejects all arguments the Department Defendants advance in favor of dismissal, and therefore the Court denies their dismissal motion.

### C. Defendant Vrell

Reading Defendant Vrell's dismissal motion, his actual legal *arguments* come surprisingly late in the game. *Cf.* ECF No. 91 at 1–9. And once a reader gets there, those arguments sound familiar:

- Plaintiffs' Second Amended Complaint fails to plausibly allege a claim against Defendant Vrell for violation of the Eighth Amendment; and

- Defendant Vrell is entitled to qualified immunity and therefore Plaintiffs' claim against him should be dismissed as a matter of law.

ECF No. 91 at 9, 11. The Court considers and rejects these arguments in turn.

***First***, Defendant Vrell essentially argues that the allegations in the operative complaint fail to show that he "personally participated in the alleged constitutional violation with a sufficiently culpable state of mind." ECF No. 91 at 10; ECF No. 119 at 3. But the operative complaint contains the following well-pleaded allegations:

- Defendants knew lidocaine played a role in Mr. Esquivel's seizures. *On August 9, Defendant Vrell searched Mr. Esquivel's cell following his seizure, searching for evidence of the substance involved in causing the*

_____

the Court reiterates that Plaintiffs have set forth plausible claims against Defendants Bennion and Buchanan under these other two theories of deliberate indifference, as explained above.

*seizure*. They found unknown white pills, a flex pen with residue inside, and four lidocaine patches, which Mr. Esquivel was not prescribed to possess or use.

- Defendant Vrell *once again found a discrepancy in Mr. Esquivel's property which was a clear indication Mr. Esquivel was buying lidocaine patches*, and likely other substances, using prison property and other personal possessions.

- Defendant Vrell reported finding the unprescribed lidocaine patches to his superiors and medical staff, including Defendants Fontenot, Licano, and Ortiz named herein. By this time, it was well known by both security and medical staff that Mr. Esquivel was trading for or buying lidocaine patches, consuming the liquid, and suffering dangerous seizures as a result.

- On September 5, 2022, the predictable tragedy happened: Mr. Esquivel died from a seizure related to lidocaine toxicity. This death was not only preventable by the Defendants who failed to act prior to that date, it was preventable *had Defendants Hines, Vrell, and Robinson performed their duties to keep Mr. Esquivel safe.*

- *At approximately 11:00 AM, Defendants Vrell and Robinson conducted a safety round of Mr. Esquivel's unit, but failed to ensure he stood and/or was breathing and safe*. They failed to ensure he was in a standing position, as required by Post Orders. The officers completed their safety check of the entire unit in less than 40 seconds**.** *Defendant Vrell admitted in his incident review interview that he did not prioritize making incarcerated people stand for count enough*, admitting facts sufficient to infer deliberate indifference.

- During a round at 12:09 PM, they once again failed to ensure Mr. Esquivel was breathing and safe, and failed to ensure he stood, in violation of Post Orders.

- Defendants Vrell and Robinson then failed to conduct any safety rounds whatsoever of Mr. Esquivel's unit between 12:09 PM and the end of their shift at 2:00 PM, also in violation of Post Orders.

- Defendants Hines, Vrell, and Robinson failed to hew to the Post Orders requiring careful safety checks, rules they knew exist to ensure the safety of people in their custody like Mr. Esquivel.

ECF No. 72 at ¶¶ 53–55, 133, 138–140, 148 (citations modified).

Accepting these allegations as true and drawing inferences from them in Plaintiffs' favor, they are certainly enough to "indicate [and] suggest that Defendant Vrell subjectively recognized and disregarded a substantial risk to Mr. Esquivel's safety," thus surviving Defendant Vrell's dismissal challenge to Plaintiffs' Eighth Amendment claim. ECF No. 91 at 10. Indeed, Defendant Vrell's arguments that Plaintiffs' claim is implausible because Plaintiffs fail to allege, for instance, that Defendant Vrell had "any role in Mr. Esquivel's medical care," *id.*, invite a misapplication of the governing legal standard, but moreover Defendant Vrell cites no authority in support of the proposition that such an allegation is *a requirement* for Plaintiffs' ability to assert a plausible Eighth Amendment claim against Defendant Vrell as "an employee of CDOC" whom Plaintiffs sue in his individual capacity. ECF No. 72 at ¶ 20; *cf.* ECF No. 119 at 5. Nor does Defendant Vrell's alleged reporting of Mr. Esquivel's lidocaine patches immunize him from deliberate indifference liability, *see Lucas*, 58 F.4th at 1139, particularly where Plaintiffs also allege that, like Defendant Robinson, Defendant Vrell violated Post Orders. *Compare* ECF No. 91 at 10, *with Burwell*, 7 F.4th at 456. And these allegations read in their entirety—which are not *at all* simply "generalized" or "conclusory"— certainly do more than advance a "negligence" theory of liability. *Cf.* ECF No. 91 at 10.

Fundamentally, and for substantially the same reasons discussed in the Court's analysis of Defendant Robinson's and the Department Defendants' dismissal motions, the Court agrees with Plaintiffs that they have pleaded a plausible *failure to protect* claim against Defendant Vrell, particularly in light of the ample allegations regarding Defendant

Vrell's subjective knowledge of the excessive risks that Mr. Esquivel faced to his safety due to both his lidocaine abuse and seizure disorder, and Defendant Vrell's failure to adequately monitor Mr. Esquivel—in other words, his personal involvement—despite that subjective knowledge. *See* ECF No. 112 at 7; *id.* at 9 (citing ECF No. 72 at ¶¶ 53–56, 131–32); *id.* at 10; *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 308 (10th Cir. 1985) ("Deliberate indifference to serious medical needs may be shown by proving there are such gross deficiencies in staffing, facilities, equipment, *or procedures* that the inmate is effectively denied access to adequate medical care." (citation modified)). The Court's conclusion is bolstered by Plaintiffs' allegations that Defendant Vrell's conduct also amounted to violations of Post Orders. *See Burwell*, 7 F.4th at 456.

**Second**, as for Defendant Vrell's qualified immunity argument, it proceeds from a flawed premise: "[T]here is no clearly established constitutional right to be protected from the voluntary misuse of contraband." ECF No. 91 at 12.[11] Defendant Vrell cites authority also marshaled by Defendant Robinson and the Department Defendants—for example, *Zakora* and *Legate*—which, explained above, does not foreclose Plaintiffs' Eighth Amendment claims. *Cf.* ECF No. 91 at 12–13. Indeed, plenty of cases in the Tenth Circuit permitted Eighth Amendment deliberate indifference claims to proceed *despite* or

---

[11] Defendant Vrell also argues that "violations of internal policies" do not amount to constitutional violations. ECF No. 91 at 12. The Court devotes little time to this argument because reading the operative complaint and Plaintiffs' responses to Defendants' dismissal motions confirm that their claims are not premised on various Defendants' violations of Post Orders *alone*, but rather proceed from the premise that Mr. Esquivel's constitutional rights were violated by the entirety of Defendants' conduct, all of which—accepting Plaintiffs' well-pleaded allegations as true—amounts to deliberate indifference.

notwithstanding a plaintiff's or decedent's voluntary conduct. *See, e.g., Garcia*, 768 F.2d at 308. Accordingly, Defendant Vrell's *clearly established* argument fails.

Defendant Vrell then argues the following, which the Court quotes in full:

> Because Plaintiffs fail to allege any conduct by Defendant Vrell that plausibly violated a constitutional right, and because no clearly established law prohibits the alleged conduct, qualified immunity applies. *See White v. Pauly*, 580 U.S. 73, 79 (2017) (qualified immunity protects all but the "plainly incompetent or those who knowingly violate the law"). There is no legal basis for holding Defendant Vrell individually liable under these circumstances. Accordingly, the claim against him must be dismissed.

ECF No. 91 at 14.

This paragraph—except for a parenthetical quotation—is three sentences long. *See id.* Asserting qualified immunity in such an abbreviated way—and in a way that essentially incorporates *plausibility* arguments—is wrong doctrinally. *See, e.g., Berryman*, 143 F.4th at 1140; *Ellis*, 147 F.4th at 1220. Accordingly, the Court rejects this argument as a basis for dismissing Plaintiffs' claim against Defendant Vrell and need say no more. And, as with the Department Defendants, arguments made in reply are not enough to salvage the motion's own briefing deficiencies. *See Healy-Petrik*, 2022 WL 464220, at *6 n.8.

* * *

The Court makes one final observation. Three of the four instant dismissal motions assert qualified immunity as a defense to Plaintiffs' claims. They do so in a manner that, by now, the Tenth Circuit has clearly stated is insufficient. *See Berryman*, 143 F.4th at 1140–41.

The Court takes seriously any defendant's assertion of qualified immunity. After all, "qualified immunity is not only a defense to liability, but immunity from suit." *Est. of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (citation modified). But Defendants' cursory assertions of such an important defense—and then too-late efforts to salvage those assertions through rehabilitative reply briefing—threaten to undermine its importance and, at worst, insult the individuals on whose behalf it is asserted. As the Court presumes Defendants intended nothing of the sort—despite the quality and brevity of their qualified immunity briefing—it presumes moving forward that their briefing on any substantive issue will be well-developed yet concise, and adherent to any clear Tenth Circuit guidance or precedent.

### D. Defendant Amergis Healthcare

Defendant Amergis Healthcare Staffing Incorporated (Amergis Healthcare) moves to strike and dismiss, *see* ECF No. 127 at 4, Plaintiffs' claims against it. The Court rejects Amergis Healthcare's arguments for the following reasons.

*First*, Amergis Healthcare moves to strike Plaintiffs' "First Claim for Relief . . . as to [it] as duplicative pursuant to" Rule 12(f). ECF No. 127 at 6. However, the Court agrees with Plaintiffs that, although this claim is styled as asserted "Against All Defendants," ECF No. 72 at 41, it is clear this claim is asserted against the individual Defendants. *See* ECF No. 136 at 2–3; ECF No. 72 at ¶ 162 ("All of the deliberately indifferent acts of each *individual Defendant* were conducted within the scope of their official duties and employment." (citation modified)). Accordingly, to the extent that Amergis Healthcare moves to strike Plaintiffs' first claim against it, this request is denied as moot, given it is

clear that Plaintiffs—as they represent in their response to Amergis Healthcare's motion—only assert their first claim for relief against the individual defendants. *See* ECF No. 136 at 2–3; ECF No. 72 at ¶ 162. The Court's conclusion to deny Amergis Healthcare's request as moot is bolstered by Plaintiffs' representation that "Plaintiffs' counsel have conferred with defense counsel for Amergis and agreed to stipulate that only Claims Two and Three are alleged against Defendant Amergis." ECF No. 136 at 3.

*Second*, Amergis Healthcare—after reciting basic § 1983 vicarious liability principles—argues only the following: "Given the clear holding of U.S. courts on this issue, Plaintiffs' references to, and claims sounding in vicarious liability in their Second Claim for Relief fail as a matter of law and must be dismissed or stricken pursuant to" Rule 12(b)(6). ECF No. 127 at 7. The Court agrees with Plaintiffs that this *single sentence* of argument is "perfunctory," ECF No. 136 at 11 and inadequately developed. Accordingly, the Court rejects it on this basis and therefore denies Amergis Healthcare's dismissal motion. *See, e.g., Morris v. O'Malley*, No. 1:22–cv–00318–LF, 2023 WL 8827730, at *8 (D.N.M. Dec. 21, 2023) ("This argument is not developed, and the Court will not consider it. [I]ssues raised only in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation modified)); *United States v. Rodriguez*, No. 19–cv–1082–WJM, 2020 WL 525717, at *4 n.2 (D. Colo. Feb. 3, 2020) ("The Court need not address arguments not raised or inadequately developed." (citation modified)); *Saleem v. Bondi*, No. 23-9568, 2025 WL 1767817, at *1 (10th Cir. June 26, 2025) ("We do not consider inadequately developed arguments." (citation modified)).

## II.    CONCLUSION

Consistent with the above analysis, Defendants' dismissal motions are DENIED. *See*

ECF Nos. 84, 86, 91, 127.

DATED this 19th day of December 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge